AO 440 (Rev. 10/93) Summons in a Civil Action

# United States District Court

SOUTHERN ——————— **DISTRICT OF** NEW YORK

JASON M. JACKLER,

                    Plaintiff,          **SUMMONS IN A CIVIL CASE**

              V.                    CASE NUMBER:

POLICE CHIEF MATTHEW T. BYRNE, Individually
and in his Official Capacity, LT. PAUL
RICKARD, in his Individual and Official
Capacity, and LT. PATRICK FREEMAN, in his
Individual and Official Capacity,

                    Defendants.

*JUDGE SEIBEL*

**09 CIV. 0126**

TO: (Name and address of defendant)

Police Chief Matthew T. Byrne
c/o City of Middletown Police Department
2 James St.
Middletown, NY 10940

**YOU ARE HEREBY SUMMONED** and required to serve upon PLAINTIFF'S ATTORNEY (name and address)

Dupee & Monroe, PC
211 Main St., Box 470
Goshen, NY 10924

an answer to the complaint which is herewith served upon you, within _____ 20 _____ days after
service of this summons upon you, exclusive of the day of service. If you fail to do so, judgment by default will be taken
against you for the relief demanded in the complaint. You must also file your answer with the Clerk of this Court within a
reasonable period of time after service.

**J. MICHAEL McMAHON**

_____          01 /08/09
CLERK                                     DATE

_____
(BY) DEPUTY CLERK

AO 440 (Rev. 10/93) Summons in a Civil Action

# United States District Court

SOUTHERN _____ DISTRICT OF _NEW YORK_

JASON M. JACKLER,

                         Plaintiff,

               V.

POLICE CHIEF MATTHEW T. BYRNE, Individually
and in his Official Capacity, LT. PAUL
RICKARD, in his Individual and Official
Capacity, and LT. PATRICK FREEMAN, in his
Individual and Official Capacity,

                         Defendants.

## SUMMONS IN A CIVIL CASE

CASE NUMBER:

JUDGE SEIBEL

09 CIV. 0126

TO: (Name and address of defendant)

Lt. Patrick Freeman
c/o City of Middletown Police Department
2 James St.
Middletown, NY 10940

**YOU ARE HEREBY SUMMONED** and required to serve upon PLAINTIFF'S ATTORNEY (name and address)

Dupee & Monroe, PC
211 Main St., Box 470
Goshen, NY 10924

an answer to the complaint which is herewith served upon you, within _____20_____ days after
service of this summons upon you, exclusive of the day of service. If you fail to do so, judgment by default will be taken
against you for the relief demanded in the complaint. You must also file your answer with the Clerk of this Court within a
reasonable period of time after service.

**J. MICHAEL McMAHON**

CLERK

_____
(BY) DEPUTY CLERK

DATE    01/08/09

AO 440 (Rev. 10/93) Summons in a Civil Action

# United States District Court

SOUTHERN _____ **DISTRICT OF** NEW YORK

JASON M. JACKLER,

**JUDGE SEIBEL**

Plaintiff,

**SUMMONS IN A CIVIL CASE**

V.

CASE NUMBER:

POLICE CHIEF MATTHEW T. BYRNE, Individually
and in his Official Capacity, LT. PAUL
RICKARD, in his Individual and Official
Capacity, and LT. PATRICK FREEMAN, in his
Individual and Official Capacity,

**09 CIV. 0126**

Defendants.

TO: (Name and address of defendant)

Lt. Paul Rickard
c/o City of Middletown Police Department
2 James St.
Middletown, NY 10940

**YOU ARE HEREBY SUMMONED** and required to serve upon PLAINTIFF'S ATTORNEY (name and address)

Dupee & Monroe, PC
211 Main St., Box 470
Goshen, NY 10924

an answer to the complaint which is herewith served upon you, within _____ 20 _____ days after
service of this summons upon you, exclusive of the day of service. If you fail to do so, judgment by default will be taken
against you for the relief demanded in the complaint. You must also file your answer with the Clerk of this Court within a
reasonable period of time after service.

**J. MICHAEL McMAHON**

DATE 01/08/09

CLERK

(BY) DEPUTY CLERK

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------X
JASON M. JACKLER,

                                        Plaintiff,

        -against-

POLICE CHIEF MATTHEW T. BYRNE, Individually
and in his Official Capacity,  LT. PAUL RICKARD, in
his Individual and Official Capacity and LT. PATRICK
FREEMAN, in his Individual and Official Capacity,
                                        Defendants.
--------------------------------------------------------X

*Judge Seibel*

ECF CASE   *09 CIV. 0126*

COMPLAINT AND
JURY DEMAND

        Plaintiff, Jason M. Jackler by his attorneys Dupee & Monroe, P.C., as and for his complaint,

alleges upon information and belief, as follows:

### INTRODUCTION

        FIRST:        This is a civil rights action brought pursuant to 42 U.S.C.A. §1983 *et. seq.* for

violations of plaintiff's rights secured by the First, Fourth, Fifth and Fourteenth Amendments of the

United States Constitution, seeking redress for defendants' deprivations, under color of state law,

of plaintiff's rights, privileges and immunities secured by the United States Constitution, the laws

of the United States and the State of New York including Article I §6 of the New York State

Constitution and defendants' violaton of the Racketeer Influenced and Corrupt Organizations Act

("RICO") as authorized by 18 U.S.C.A. §1962.

### JURISDICTION

        SECOND:        This Court is empowered by 28 U.S.C.A. §§1331, 1343, 1367, 2201 and 2202

to hear and decide plaintiff's claims for relief.   This Court also has pendant and supplemental

jurisdiction over all claims asserted herein under the laws of the State of New York pursuant to 28

U.S.C.A. §1367(a).

THIRD:      Venue is proper for the United States District Court for the Southern District of New York pursuant to 28 U.S.C.A. §1391(a),(b) & (c).

## PARTIES

FOURTH:    That at all times hereinafter mentioned, the plaintiff Jason M. Jackler (hereinafter "Jackler") was a probationary police officer with the City of Middletown Police Department and is a resident of the County of Orange, State of New York.

FIFTH:      Upon information and belief, the defendant, Police Chief Matthew Byrne (hereinafter "Chief Byrne) was and is the Chief of Police and senior administrator for the City of Middletown Police Department.   At all relevant times herein, Chief Byrne was the senior administrator in charge of the day-to-day operations of the City of Middletown Police Department. Chief Byrne is being sued in his individual and official capacities. At all relevant times hereinafter mentioned, Chief Byrne was acting under color of state law and was in the course and scope of his employment as Chief of Police and senior administrator with/for the City of Middletown Police Department.

SIXTH:      Upon information and belief, the defendant, Lt. Patrick Freeman (hereinafter "Lt. Freeman") was and is a police officer and administrator with the City of Middletown Police Department. Lt. Freeman is being sued in his individual and official capacities. At all relevant times hereinafter mentioned, this defendant was acting under color of state law and within the course and scope of his employment as a police officer and administrator with/for the City of Middletown Police Department.

SEVENTH:    Upon information and belief, the defendant, Lt. Paul Rickard (hereinafter "Lt. Rickard") was and is a police officer and administrator with the City of Middletown Police Department. Lt. Rickard is being sued in his individual and official capacities. At all relevant times

hereinafter mentioned, this defendant was acting under color of state law and within the course and scope of his employment as a police officer and administrator with/for the City of Middletown Police Department.

EIGHTH:    At all times hereinafter mentioned, the City of Middletown Police Department is an administrative arm and/or sub-division of the City of Middletown and was at all times under the direction and control of the defendant, Chief Byrne.

NINTH:    That at all relevant times hereinafter mentioned, defendants Chief Byrne, Lt. Freeman and Lt. Rickard, and each of them, were and are responsible for the enforcement of all City of Middletown Police Department policies and practices and were responsible for the appointing, hiring, training and supervising of all City of Middletown Police Department personnel.

TENTH:    That at all relevant times hereinafter mentioned the policies, practices, procedures of the City of Middletown Police Department was/were governed, administrated and/or controlled by the City of Middletown Board of Police Commissioners.

ELEVENTH: That at all relevant times hereinafter mentioned, the City of Middletown Board of Police Commissioners met on a monthly basis  with the defendants, Chief Byrne, Lt. Freeman and/or Lt. Rickard, who were, among other things, responsible for providing the City of Middletown Board of Police Commissions with truthful and accurate information about the conduct and progress of newly hired and/or probationary officers such as the plaintiff, Jackler.

TWELFTH:    That at all relevant times hereinafter mentioned, the City of Middletown Board of Police Commissioners, made the final decision(s) concerning the hiring, retention or promotion of the City of Middletown Police Department personnel based upon the information, advice and recommendations provided by the defendants, Chief Byrne, Lt. Freeman and Lt. Rickard, and each of them.

THIRTEENTH:        That on or about January 31, 2005 plaintiff, Jackler was hired and/or appointed as a probationary officer with the City of Middletown Police Department by the City of Middletown Board of Police Commissioners based upon the information, advice and recommendations provided by the defendants, Chief Byrne, Lt. Freeman and/or Lt. Rickard.

## STATEMENT OF FACTS

FOURTEENTH:        That on or about January 5, 2006, at approximately 8:55 P.M., the plaintiff, Jackler was employed as a probationary officer with the City of Middletown Police Department and was directed to assist Sgt. Gregory W. Metakes (hereinafter Sgt. Metakes) in the arrest and transportation of an individual by the name of Zachary T. Jones (hereinafter "Jones").

FIFTEENTH:  That upon arriving at the "Mobile On The Run" located at the intersection of Monhagen Avenue and State Route 211 in the City of Middletown, New York in a marked police vehicle, the plaintiff, Jackler opened the rear driver-side door of his patrol unit #6 in order to allow Sgt. Metakes to place Jones in the back of this police vehicle.

SIXTEENTH: That Jones was placed in the back of patrol unit #6 by Sgt. Metakes while Jones was handcuffed behind his back.

SEVENTEENTH:        That after Sgt. Metakes placed the handcuffed Jones in the back of patrol unit #6 and in the process of closing the rear driver-side door, Jones referred to Sgt. Metakes as a "dick" loud enough for both Jackler and Sgt. Metakes to hear.

EIGHTEENTH:        Upon hearing Jones refer to him as a "dick", Sgt. Metakes reopened the rear driver-side door of patrol unit #6 in the presence of plaintiff Jackler and did strike the handcuffed Jones in the face and re-closed the door.

NINETEENTH:        That Sgt. Metakes' use of force upon the person of Jones while handcuffed in the rear of the patrol unit #6 constituted a violation of state and federal law and

represented the use of "unnecessary force" as this term is defined by the City of Middletown Police

Department's Order #03-01 which states:

> Unnecessary force occurs when unjustified physical abuse of a person has occurred or when it is apparent that the type or degree of force employed was neither necessary nor appropriate, or when any degree of force is utilized as someone's punishment or vengeance.   THE USE OF INDISCRIMINATE FORCE IS PROHIBITED.  Exhibit "A"

TWENTIETH:      Following his arrest, Jones filed a civilian complaint with the City of

Middletown Police Department against Sgt. Metakes for this officer's excessive and unwarranted

use of force.  Exhibit "B"

TWENTY-FIRST:     That Lt. Warycka and Police Officer Sal Garretto assisted Zachary

Jones in filing a civilian complaint against Sgt. Metakes on January 5, 2006 at approximately 9:45

p.m. and noted - - in writing - - the physical injuries to Zachary Jones' face.

TWENTY-SECOND:       That the defendants, Chief Byrne, Lt. Freeman and Lt. Rickard,

and each of them, had a close personal and professional relationship with Sgt. Metakes who has

since been promoted to lieutenant.

TWENTY-THIRD:    That defendant, Chief Byrne, actively participated in the investigation

and ultimate determination made with regards to the merits of the civil complaint filed by Jones.

TWENTY-FOURTH:       That defendant, Freeman, actively participated in the

investigation and ultimate determination made with regards to the merits of the civil complaint filed

by Jones.

TWENTY-FIFTH:    That defendant, Rickard, actively participated in the investigation and

ultimate determination made with regards to the merits of the civil complaint filed by Jones.

TWENTY-SIXTH:    On or about January 9, 2006 the defendant, Lt. Freeman issued an

internal memo to plaintiff, Jackler directing him to file a supplemental report as to what transpired in the course of Sgt. Metakes' arrest of Jones on January 5, 2006.

TWENTY-SEVENTH:        That at the outset of this internal investigation, it was the intentions and the purpose of defendants Chief Byrne, Lt. Freeman and Lt. Rickard, and each of them, to cover-up and conceal the misconduct and illegal actions committed by Sgt. Metakes in connection with his arrest and apprehension of Jones on January 5, 2006.

TWENTY-EIGHTH: As directed by defendant Lt. Freeman, plaintiff, Jackler as a probationary officer with the City of Middletown Police Department, filed a supplemental report on January 11, 2006 at approximately 8:00 a.m., which stated:

> ON 1/5/06 AT APPROX. 8:55PM, I, OFFICER JACKLER, RESPONDED TO MOBILE ON THE RUN TO ASSIST SGT. METAKES OF THE NARCOTICS UNIT.   UPON ARRIVAL, SGT. METAKES HAD A SUBJECT, NOW KNOWN TO ME AS ZACHARY JONES, HANDCUFFED AND UP AGAINST THE NARCOTICS CAR FOR DISORDERLY CONDUCT. I OBSERVED JONES TO HAVE MULTIPLE ABRASIONS ON HIS FACE.  I OPENED UP THE DRIVER'S SIDE REAR-DOOR OF MY PATROL UNIT #6 AND SGT. METAKES PLACED JONES IN THE BACK SEAT.   UPON CLOSING THE DOOR, JONES UTTERED THE WORD "DICK". SGT. METAKES THEN RE-OPENED THE DOOR AND STRUCK JONES IN THE FACE, THEN RE-CLOSED THE DOOR. WHILE I WAS TRANSPORTING JONES BACK TO 370 HE ASKED ME "IS HE ALLOWED TO DO THAT"?  I STATED TO JONES TO DISCUSS THE SITUATION WITH THE OTHER OFFICER ONCE WE GET BACK TO 370. Exhibit "C"

TWENTY-NINTH:    That plaintiff Jackler's supplemental report dated January 11, 2006 corroborated Jones' civilian complaint which alleged, generally, that Metakes' use of force was

excessive, unjustified and illegal under the circumstances.

THIRTIETH:  That later during the afternoon of January 11, 2006, at approximately 3:50 p.m., defendants, Freeman and Rickard, met with plaintiff Jackler and began to aggressively interrogate and threaten him about and concerning the statements contained in his supplemental report filed earlier that morning.

THIRTY-FIRST:   That in the course of this interrogation and several subsequent meetings, defendants Freeman and Rickard, at the insistence and direction of Chief Byrne did attempt to threaten and coerce  plaintiff Jackler to withdraw his supplemental report dated January 11, 2006 and refile a new report which contained false, incomplete and misleading information all in an effort to conceal the illegal actions and misconduct of Sgt. Metakes.

THIRTY-SECOND:  That during the course of these meetings with plaintiff, Jackler the defendants, Chief Byrne, Lt. Freeman and Lt. Rickard, and each of them, did recover and review video footage which confirmed and corroborated the truthful accounts of Jones and plaintiff Jackler about and concerning the misconduct and illegal actions perpetrated by Sgt. Metakes.

THIRTY-THIRD:    That in the course of issuing his supplemental report dated January 11, 2006 plaintiff Jackler did speak with Officer Sal Garretto and Lt. Michael Napoli who encouraged plaintiff Jackler to stand by the truth.

THIRTY-FOURTH:  That on or about January 13, 2006 defendant, Lt. Rickard, ordered Police Officer Garretto, to submit a statement in connection with Jones' civilian complaint and subsequent conversations with plaintiff Jackler.  Exhibit "D"

THIRTY-FIFTH:    That plaintiff Jackler, was given a good performance review from his training Supervisor Lt. Corcoran on October 31, 2005 and was otherwise regarded as a good probationary police officer. Exhibit "E"

THIRTY-SIXTH:      That on or about January 19, 2006 defendants, Chief Byrne and Lt. Rickard, did appear before the City of Middletown Board of Police Commissioner's monthly meeting for the purpose, in part, to determine whether to retain probationary officers Nathaniel DeYoung and plaintiff, Jackler, as permanent police officers with the City of Middletown Police Department who had both been hired on a probationary basis on January 31, 2005.  Exhibit "F"

THIRTY-SEVENTH:        That the defendants, Chief Byrne and Lt. Rickard, with the assistance and facilitation of the defendant, Lt. Freeman, did provide the City of Middletown Board of Police Commissioners with false, incomplete and misleading information about and concerning the job performance and tenure of plaintiff Jackler in retaliation for plaintiff Jackler's refusal to change, alter or falsify his supplemental report dated January 11, 2006 and participate in defendants' conspiracy.

THIRTY-EIGHTH:    That in response to the information, recommendation and advice received by the defendants, Chief Byrne and Lt. Rickard, and as facilitated by defendant, Lt. Freeman, City of Middletown Board of Police Commissioners did unanimously vote to dismiss plaintiff, Jackler from further employment with the City of Middletown Police Department effective January 21, 2006.  Exhibit "F"

THIRTY-NINTH:      That in the course of this January 19, 2006 meeting of the City of Middletown Board of Police Commissioners, this administrative body did unanimously vote to retain Officer DeYoung as a permanent police officer with the City of Middletown Police Department and unanimously vote to hire new probationary officers Frederick Slanovec, James Schoenleder, Jacqueline Blair and Jason Berman effective January 30, 2006.

FORTIETH:    That plaintiff, Jackler's dismissal from further employment effective January 21, 2006 represented the first time the City of Middletown Board of Police Commissioners

terminated a probationary police officer.

FORTY-FIRST:     That on or about January 20, 2006 plaintiff, Jackler was directed to meet with defendants, Chief Byrne, Lt. Freeman, Lt. Rickard and Lt. Corcoran, and was advised for the first-time that he was being terminated.

FORTY-SECOND:    That notwithstanding the strong evidence to the contrary, defendant, Lt. Freeman, did knowingly file a false report with the City of Middletown Police Department which determined Jones' claims as against Sgt. Metakes were "unfounded"  all in furtherance of defendants' conspiracy.  Exhibit "G"

### AS AND FOR A FIRST CAUSE OF ACTION AS AGAINST DEFENDANTS CHIEF BYRNE, LT. FREEMAN AND LT. RICKARD

### FIRST AND FIFTH AMENDMENT/RETALIATION

FORTY-THIRD:     Plaintiff repeats, reiterates and realleges with the same force and effect as if fully set forth herein at length each and every allegation herein above alleged and set forth in Paragraphs "FIRST" through "FORTY-SECOND" of this complaint.

FORTY-FOURTH:    That plaintiff Jackler's refusal to file a false or misleading report about and concerning the illegal actions or misconduct of Sgt. Metakes was a substantial factor in defendants' determination to retaliate against the plaintiff and seek, advise and counsel the City of Middletown Board of Police Commissioners to dismiss plaintiff, Jackler from further employment as a City of Middletown Police Officer.

FORTY-FIFTH:     That plaintiff, Jackler, is protected by the First and Fifth Amendments of the United States Constitution and Article I §6 of the New York Constitution from having to be forced, directed or coerced by the defendants to prepare and/or file a written report with a governmental agency or subdivision such as the City of Middletown Police Department which

contained false, incomplete or misleading information.

FORTY-SIXTH:        That plaintiff, Jackler, prepared his supplemental report dated January 11, 2006 while serving as a probationary police officer with the City of Middletown Police Department and was otherwise acting in his official capacity as a public servant and an employee of the City of Middletown.

FORTY-SEVENTH: That in the capacity as a probationary officer of the City of Middletown Police Department plaintiff, Jackler had a moral and legal responsibility to make sure that all written reports filed with the City of Middletown Police Department were truthful and accurate in all respects.

FORTY-EIGHTH:        That defendants, Chief Byrne, Lt. Freeman and Lt. Rickard, and each of them, acted in concert to threaten and coerce plaintiff Jackler to falsify his official report and violated plaintiff Jackler's First and Fifth Amendment right under the United States Constitution and Article I §6 of the New York State Constitution against self incrimination.

FORTY-NINTH:        That had plaintiff, Jackler, succumbed to the threats and coercion exerted by the defendants, the filing of a false or intentionally misleading report would have constituted a crime under the Penal Laws of the State of New York.

FIFTIETH:        That plaintiff, Jackler's unwillingness to compromise his integrity and conspire with the defendants to conceal the illegal actions and misconduct of Sgt. Metakes resulted in the defendants' decision to seek and secure plaintiff Jackler's termination as a City of Middletown Police Officer.

FIFTY-FIRST:        That plaintiff, Jackler's refusal to cooperate with the defendants and commit a criminal act by altering or falsifying his supplemental report dated January 11, 2006 was the motivating factor for the defendants' decision to seek and secure plaintiff's termination as a City

of Middletown Police Officer.

FIFTY-SECOND:        That as a direct result of the defendants' retaliatory conduct, including securing the termination of the plaintiff, Jackler with the City of Middletown Board of Police Commissioners, the plaintiff, Jackler was caused to suffer shame, humiliation, loss of career prospects, loss of financial benefits, loss of opportunities for advancement in his career as a police officer, and financial damages due to the loss of pay and benefits associated with a career as a permanent police officer with the City of Middletown Police Department.

FIFTY-THIRD:        That as a result of the foregoing, the plaintiff, Jackler, has sustained damages in an amount which exceeds the jurisdictional limits of all other Courts which may have subject matter jurisdiction hereof.

### AS AND FOR A SECOND CAUSE OF ACTION AS AGAINST THE DEFENDANTS, CHIEF BYRNE, LT. FREEMAN AND LT. RICKARD

### SUBSTANTIVE DUE PROCESS

FIFTY-FOURTH:        Plaintiff repeats, reiterates and realleges with the same force and effect as if fully set forth herein at length each and every allegation herein above alleged and set forth in Paragraphs "FIRST" through "FORTY-SECOND" and "FORTY-FOURTH" through "FIFTY-SECOND" of this complaint.

FIFTY-FIFTH:        That defendants, Chief Byrne, Lt. Freeman and Lt. Rickard, and each of them, did retaliate against the plaintiff by seeking and securing the termination of the plaintiff, Jackler by providing the City of Middletown Board of Police Commissioners with false, incomplete or misleading information about and concerning the plaintiff, Jackler's performance and tenure as a probationary officer with the City of Middletown Police Department.

FIFTY-SIXTH:        That defendants' plan and common scheme to retaliate against the

plaintiff was accomplished by the defendants in such a manner and fashion which made it reasonably foreseeable and fairly certain that the City of Middletown Board of Police Commissioners would accept and adopt defendants' recommendations to terminate the plaintiff from further employment with the City of Middletown Police Department.

FIFTY-SEVENTH:    That the defendants' efforts to conceal and cover-up the illegal actions and misconduct of Sgt. Metakes and retaliate against the plaintiff, Jackler rises to the degree of culpability that shocks the conscious of an average citizen.

FIFTY-EIGHTH:    That at all relevant times hereinafter mentioned, the defendants, Chief Byrne, Lt. Freeman and Lt. Rickard, were acting under color of state of law and in their official capacities as administrators of the City of Middletown Police Department when they made the decisions to cover-up the misconduct of Sgt. Metakes and retaliate against the plaintiff, Jackler for his refusal to commit a crime by filing a false or incomplete report.

FIFTY-NINTH:    That the defendants, Chief Byrne, Lt. Freeman and Lt. Rickard, and each of them, used their public authority as administrators of the City of Middletown Police Department to conceal and cover-up the illegal actions and misconduct of Sgt. Metakes and seek and secure the termination of the plaintiff, Jackler as a permanent police officer with the City of Middletown Police Department.

SIXTIETH:    That had the defendants, Chief Byrne, Lt. Freeman or Lt. Rickard, provided the City of Middletown Board of Police Commissioners with truthful and accurate information about and concerning the plaintiff Jackler's job performance and tenure as a probationary police officer, the City of Middletown Board of Police Commissioners would have retained plaintiff, Jackler as a permanent police officer with the City of Middletown Police Department and the defendants' actions and representations with regards to the plaintiff, Jackler.

SIXTY-FIRST:     That as a result of defendants, Chief Byrne, Lt. Freeman or Lt. Rickard's actions, the plaintiff, Jackler was caused to suffer shame, humiliation, loss of career prospects, loss of financial benefits, loss of opportunities for advancement in his career as a police officer, and financial damages due to the loss of pay and benefits associated with a career as a permanent police officer with the City of Middletown Police Department.

SIXTY-SECOND:    That as a result of the foregoing, the plaintiff, Jackler, has sustained damages in an amount which exceeds the jurisdictional limits of all other Courts which may have subject matter jurisdiction hereof.

### AS AND FOR A THIRD CAUSE OF ACTION AS AGAINST THE DEFENDANTS, CHIEF BYRNE, LT. FREEMAN AND LT. RICKARD

### CONSPIRACY

SIXTY-THIRD:      Plaintiff repeats, reiterates and realleges with the same force and effect as if fully set forth herein at length each and every allegation herein above alleged and set forth in Paragraphs "FIRST" through "FORTY-SECOND", "FORTY-FOURTH" through "FIFTY-SECOND" and "FIFTY-FIFTH" through "SIXTY-FIRST" of this complaint.

SIXTY-FOURTH:    That the defendants, Chief Byrne, Lt. Freeman and Lt. Rickard, and each of them, did act in concert to violate plaintiff, Jackler's rights, privileges, immunities secured by the First, Fourth, Fifth and Fourteenth Amendments of the U.S. Constitution as well as the plaintiff's rights to procedural and substantive due process and equal protection of the laws.

SIXTY-FIFTH:     That in response to and as a result of plaintiff, Jackler's refusal to commit a crime by filing a false or misleading report about or concerning the illegal actions and misconduct of Sgt. Metakes, these administrators and superiors of the plaintiff, Jackler agreed to cooperate with each other for the purpose of retaliating against the plaintiff, Jackler by seeking and

securing his termination as a police officer with the City of Middletown Police Department.

SIXTY-SIXTH:      That on or about January 11, 2006 the defendants, Chief Byrne, Lt. Freeman and Lt. Rickard, and each of them, actively began to conceal and cover-up Sgt. Metakes' use of excessive force during the course of Jones' arrest on January 5, 2006 and in the course of such a cover-up, attempted to coerce and threaten the plaintiff, Jackler to change, alter or falsify his supplemental report.

SIXTY-SEVENTH:    That in the furtherance of said conspiracy, the defendants, Chief Byrne, Lt. Freeman and Lt. Rickard, and each of them, purposely concealed or ignored the evidence presented by Jones' civilian complaint; the supplemental report filed by plaintiff, Jackler; the report of Lt. Warycka;  the report of Police Officer Garretto; and the video footage depicting this incident, all in an effort to conceal Sgt. Metakes' illegal conduct and prepare a false and final report dismissing Jones' complaint as unfounded.

SIXTY-EIGHTH:      That once it was clear to the defendants that plaintiff, Jackler would not falsify or alter his supplemental report dated January 11, 2006, the defendants, Chief Byrne, Lt. Freeman and Lt. Rickard, and each of them, did retaliate against the plaintiff by supplying and/or providing false, incomplete or misleading information to the City of Middletown Police Commissioners about and concerning the plaintiff's performance and tenure as a probationary police officer with the City of Middletown Police Department.

SIXTY-NINTH:      That this illegal and retaliatory enterprise entered into by and between the aforementioned defendants was in direct response to the truthful and accurate statements contained in plaintiff, Jackler's supplemental report dated January 11, 2006 which directly implicated Sgt. Metakes as a police officer who used indiscriminate and excessive force upon an arrestee who had already been placed in handcuffs - - behind his back - - and securely placed in the

rear driver-side of patrol unit #6.

SEVENTIETH:      That in furtherance of this conspiracy to terminate plaintiff's employment, defendants, Chief Byrne, Lt. Freeman and Lt. Rickard, did provide members of the City of Middletown Board of Police Commissioners with false, incomplete and/or misleading information about and concerning plaintiff, Jackler's tenure and performance as  a probationary police officer with the City of Middletown Police Department and in doing so made it reasonably certain that the City of Middletown Board of Police Commissioners would receive and accept the recommendations of the defendants and dismiss plaintiff, Jackler from further employment effective January 21, 2006.

SEVENTY-FIRST:    That as a result of defendants' conspiratorial enterprise, the plaintiff, Jackler was caused to suffer shame, humiliation, fear, loss of career prospects, loss of financial benefits, loss of opportunities for advancement in his career as a police officer, and financial damages due to the loss of pay and benefits associated with a career as a permanent police officer with the City of Middletown Police Department.

SEVENTY-SECOND:       That as a result of the foregoing, the plaintiff, Jackler, has sustained damages in an amount which exceeds the jurisdictional limits of all other Courts which may have subject matter jurisdiction hereof.

### AS AND FOR A FOURTH CAUSE OF ACTION AS AGAINST THE DEFENDANTS, CHIEF BYRNE, LT. FREEMAN AND LT. RICKARD

### RACKETEER INFLUENCED AND CORRUPT ORGANIZATIONS ACT ("RICO")

SEVENTY-THIRD:   Plaintiff repeats, reiterates and realleges with the same force and effect as if fully set forth herein at length each and every allegation herein above alleged and set forth in Paragraphs "FIRST" through "FORTY-SECOND", "FORTY-FOURTH" through "FIFTY-

SECOND", "FIFTY-FIFTH" through "SIXTY-FIRST" and "SIXTY-FOURTH" through "SEVENTY-FIRST" of this complaint.

SEVENTY-FOURTH:    That the defendants, Chief Byrne, Lt. Freeman and Lt. Rickard, and each of them, conducted the investigation of Jones' civilian complaint and retaliated against the plaintiff through a pattern of racketeering activity in violation of 18 U.S.C.A. §1962.    That defendants illicit enterprise constituted a "pattern of racketeering activity" as defined by 18 U.S.C.A. §1961(4) and included the following illegal and criminal acts:

(1)    defendants, Lt. Freeman and Lt. Rickard, attempted to coerce and/or threaten the plaintiff Jackler to falsify or alter his supplemental report beginning on January 11, 2006 up until the time Jackler was terminated by the City of Middletown Board of Police Commissioners on January 19, 2006;

(2)    defendants, Chief Byrne, Lt. Freeman and Lt. Rickard consciously and deliberately ignored or suppressed the statements filed by Jones and Jackler concerning the illegal actions of Sgt. Metakes;

(3)    defendants, Chief Byrne, Lt. Freeman and Lt. Rickard's deliberately suppressed and/or altered the video footage recovered from the "On The Run Gas Station" which corroborated the written accounts of Jones and plaintiff, Jackler;

(4)    defendants' decision to obtain and use video footage that they knew had been altered or erased to conceal Sgt. Metakes' misconduct and/or illegal actions;

(5)    defendants Lt. Freeman and Lt Rickard coerced and/or threatened Police Officer Garretto from disseminating truthful and accurate information about and concerning the civilian complaint filed by Jones and the subsequent statements made by plaintiff Jackler;

(6)    defendants, Chief Byrne, Lt. Freeman and Lt. Rickard consciously decided to provide

members of the City of Middletown Board of Police Commissioners with false, incomplete or misleading information about and concerning plaintiff Jackler's tenure and performance as a probationary officer with the City of Middletown Police Department on or about January 19, 2006;

(7)    defendants, Chief Byrne, Lt. Freeman and Lt. Rickard deliberately provided the Orange County District Attorney's office with false or incomplete information and/or documentation concerning the allegations made by Jones as against Sgt. Metakes; and

(8)    in that defendant Lt. Freeman prepared and Chief Byrne received a written report on or about March 16, 2006 which they knew contained false, misleading and incomplete information about and concerning the complaint filed by Jones as against Sgt. Metakes and which concluded that such allegations were "unfounded".

SEVENTY-FIFTH:    That each of the aforementioned acts committed by these defendants were dedicated to the purpose of (1) concealing the illegal actions and misconduct perpetrated by Sgt. Metakes on January 5, 2006; and (2) retaliating against plaintiff, Jackler for his refusal to conspire with the defendants and commit the crime of filing a false public report.

SEVENTY-SIXTH:    That the defendants, Chief Byrne, Lt. Freeman and Lt. Rickard, and each of them, as  senior administrators of the City of Middletown Police Department to make recommendations to the police commission concerning the hiring and retention of probationary officers such as the plaintiff, Jackler; to initiate internal investigations and make internal findings concerning police officers under their command; and report the presence of criminal activity on the part of officers under their command to the Orange County District Attorney's office and that the defendants used these powers and authority in participating in an enterprise to cover-up and conceal the illegal actions and misconduct of Sgt. Metakes

SEVENTY-SEVENTH:        That the defendants through their collective and individual

roles did objectively manifest an agreement to participate in the affairs of this illicit enterprise.

SEVENTY-EIGHTH:        That as a direct and proximate result of plaintiff, Jackler's refusal to falsify his supplemental report dated January 11, 2006 and remain complicit in committing a criminal act, the defendants, Chief Byrne, Lt. Freeman and Lt. Rickard, and each of them, by and through their racketeering activities were directly and proximately responsible for securing and/or recommending plaintiff Jackler's termination as a City of Middletown police officer.

SEVENTY-NINTH:   That defendants utilized the United States Mail to communicate false information about and concerning the results of their investigations into the complaint filed by Jones and the City of Middletown Police Commission's decision to terminate plaintiff Jackler on January 19, 2006.

EIGHTIETH:   That as a result of defendants' conspiratorial enterprise, the plaintiff Jackler was caused to suffer shame, humiliation, fear, loss of career prospects, loss of financial benefits, loss of opportunities for advancements in his career as a police officer, financial damages due to the loss of pay and benefits associates with a career as a permanent police officer with the City of Middletown Police Department, entitling plaintiff to recover threefold damages; costs of this lawsuit; and reasonable attorney fees as authorized by 18 U.S.C.A. §1964(c).

EIGHTY-FIRST:        That as a result of the foregoing, the plaintiff, Jackler has sustained threefold damages in an amount which exceeds the jurisdictional limits of all other Courts which may have subject matter jurisdiction hereof.

WHEREFORE, the plaintiff, Jason M. Jackler, prays that this Honorable Court:

1.      accept jurisdiction over this case;

2.      impanel a jury to hear and decide this matter;

3.      award plaintiff compensatory damages against all defendants and punitive damages

against all individual defendants;

    4.     award plaintiff threefold damages by reason of defendants' violation(s) of 18

U.S.C.A. §1962;

    5.     award plaintiff reasonable costs, disbursements and interest associated with this

litigation including attorney's fees pursuant to 42 U.S.C.A. §1988 and 18 U.S.C.A. §1964; and

    6.     order any other further relief it deems just and proper.

Dated: Goshen, New York
      January 7, 2009

                  Yours, etc.,
                  DUPEE & MONROE, P.C.

                  BY: _____
                      JAMES E. MONROE, ESQ. (JM2266)
                  Office and P.O. Address
                  211 Main St., P.O. Box 470
                  Goshen, New York  10924
                  (845) 294-8900
                  email:  info@dupeemonroelaw.com

TO:    Police Chief Matthew T. Byrne
        c/o City of Middletown Police Department
        2 James St.
        Middletown, New York  10940

        Lt. Patrick Freeman
        c/o City of Middletown Police Department
        2 James St.
        Middletown, New York  10940

        Lt. Paul Rickard
        c/o City of Middletown Police Department
        2 James St.
        Middletown, New York  10940

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X

JASON M. JACKLER,                                                        ECF Case

                                        Plaintiff,

        -against-                                                        VERIFICATION

POLICE CHIEF MATTHEW T. BYRNE, Individually
and in his Official Capacity,  LT. PAUL RICKARD, in
his Individual and Official Capacity and LT. PATRICK
FREEMAN, in his Individual and Official Capacity,

                                        Defendants.
-------------------------------------------------------------------X

STATE OF NEW YORK, COUNTY OF ORANGE ss.:

        JASON M. JACKLER, being duly sworn, deposes and says:

        That he is the plaintiff herein; that he has read the foregoing Complaint and knows the

content thereof; that same is true upon his personal knowledge or upon information and belief.

                                        _____
                                        JASON M. JACKLER

Sworn to before me this 7th
day of January , 2009.

_____
        NOTARY PUBLIC

            LISA LEAR
    Notary Public, State of New York
            No. 5036826
        Qualified in Orange County
    Commission Expires Dec. 12, 2010

EXHIBIT "A"

## MIDDLETOWN POLICE DEPARTMENT
### DEPARTMENTAL ORDER

Date: 03/21/2003

Order #: 03-01

Category: GENERAL

Title: USE OF PHYSICAL FORCE

Page 1 of 4

-------------------------------------------------------------------

PURPOSE:

The purpose of this policy is to establish guidelines for the use of force by members of the City of Middletown Police Department. It is impossible to regulate what kind, and to what extent, force may be used.  This decision is dependent on a variety of circumstances and events, which is unique to almost every situation where force may be appropriate.

POLICY:

Members of the Department may only use the level of physical force necessary to effect lawful objectives in the performance of their duties with the limits established in Article 35 of the New York State Penal Law and consistent with training given by this Department.  It is the responsibility of each member to be aware of the requirements of Article 35 and to guide his/her actions based upon law.  The appropriateness of force used is dependent on the extent and type of resistance encountered.

PROCEDURE:

Generally, members may use force in the performance of their duty in the following circumstances:

   A. To prevent the commission of a breach of the peace or other unlawful act.

   B. To prevent a person from injuring him/herself.

   C. To effect the lawful arrest of persons resisting arrest or attempting to flee from custody.

   D. In self-defense or in the defense of another person.

In each individual event, lawful and proper force is restricted to that force necessary to effect or to overcome unlawful resistance to arrest and/or to preclude any further physical attack against the Police Officer or any other person.

UNNECESSARY FORCE DEFINED:

Unnecessary force occurs when unjustified physical abuse of a person has occurred or when it is apparent that the type or degree of force employed was neither necessary nor appropriate, or when

MIDDLETOWN POLICE DEPARTMENT
DEPARTMENTAL ORDER

Date: 03/21/2003

Order #: 03-01

Category: GENERAL

Title: USE OF PHYSICAL FORCE                     Page 2 of 4

---------------------------------------------------------------------------

any degree of force is utilized as summary punishment or vengeance.
THE USE OF INDISCRIMINATE FORCE IS PROHIBITED.

LEVEL OF FORCE:

When the use of force is necessary and appropriate, officers shall,
to the extent possible, utilize an escalating scale of options and
will not use more forceful measures unless it is determined that a
lower level of force is inadequate.  The scale of options in
increasing severity is as follows:

   A. Verbal Persuasion:

      The practice of courtesy in all public contacts encourages
      understanding and cooperation.  Lack of courtesy arouses
      resentment and often physical resistance.

      Simple directions which are complied with while you
      accompany the subject are, by far, the most desirable method
      of dealing with an arrest situation.  Control may be
      achieved through advice, persuasion, and warning before
      resorting to actual physical force.

      The above should not be construed to suggest that officers
      should ever relax and lose control of a situation, thus
      endangering personal safety or the safety of others.

   B. Physical Strength:

      Frequently, subjects are reluctant to be taken into custody
      and offer some degree of physical resistance.  Normally all
      that is required to overcome this resistance is physical
      strength and skill in defensive tactics.

   C. Nonlethal Weapons:

      1. OC/Pepper Spray – the purpose of OC/Pepper Spray is to
         provide the officer with a means of effecting an
         arrest, defending himself or others, or restraining
         violent persons when other, less intrusive, means have
         failed or are impractical.  Whenever OC/Pepper Spray is
         used (except for training purposes), they should be used
         in accordance with Department training.  ONLY TO THE
         DEGREE NEEDED TO GAIN CONTROL OF THE RESISTING SUBJECT.

MIDDLETOWN POLICE DEPARTMENT
DEPARTMENTAL ORDER

Date: 03/21/2003

Order #: 03-01

Category: GENERAL

Title: USE OF PHYSICAL FORCE

Page 3 of 4

---------------------------------------------------------------------

2. Impact Weapons – any impact weapon carried by an officer must be approved by the Chief of Police. The police baton may be used in accordance with Department guidelines and training. ONLY TO THE DEGREE NEEDED TO GAIN CONTROL OF THE RESISTING SUBJECT.

D. As the circumstances dictate, all or any level of force may have to be skipped up or down in order to properly secure the threat or gain compliance.

E. Deadly Physical Force – the highest level of force available to the police officer is deadly physical force. Use of Deadly Physical Force against a person is restricted to those situations in which it is reasonable and justified. (See G.O. 95-12.2)

F. Neck Restraints – at no time will any member of this Department intentionally apply the lateral vascular neck restraint, the carotid sleeper hold, or grasp a subject's throat with his hands in a frontal choke hold. Except when the use of the said holds are necessary to overcome the use of deadly physical force against the officer or another person and no other means are available.

G. First Aid – after Physical Force is used, the officer shall immediately evaluate the need for medical assistance and if necessary, arrange for such assistance. Notification to the Shift Supervisor will be made without delay. If a subject swallows or attempts to swallow drugs or other contraband and you are unable to get subject to spit them out voluntarily, he or she is to be transported to Horton Medical Center Emergency Room for medical intervention.

H. Reporting – when a subject resists and physical force becomes necessary, to overcome said resistance, each officer who used physical force will complete a Subject Resistance Form for each person upon whom he/she used physical force. The mere placing of handcuffs on a prisoner will not require a Subject Resistance Report, however, if the handcuffs become an appliance to exert pressure to further control a suspect or when a suspect physically resists the application of handcuffs, a Subject Resistance Report must be completed. This report shall be submitted to the Shift Supervisor who will review and sign the report and then forward it to the

MIDDLETOWN POLICE DEPARTMENT
DEPARTMENTAL ORDER

Date: 03/21/2003

Order #: 03-01

Category: GENERAL

Title: USE OF PHYSICAL FORCE                               Page 4 of 4

----------------------------------------------------------------

Bureau Commanders' Office for further review and
investigation.  In addition, all officers shall charge
subjects with resisting arrest in every appropriate
circumstance.

An offense report will be completed by the officer who
initially used physical force and a supplementary report
will be completed by all other officers present whether
they used physical force or not.

This General Order shall be effective on the 21st day of March 2003
and rescinds General Order 95-12.

                              BY ORDER OF:

                              Matthew T. Byrne
                              Chief of Police

**EXHIBIT "B"**

REFERENCE TO 06-325

## CITY OF MIDDLETOWN POLICE DEPARTMENT
### POLICE PERSONNEL/DEPARTMENT COMPLAINT FORM

Name of Complainant: **ZACHARY JONES**

Address: **70 SEAMAN RD CIRCLEVILLE N.Y.**

Phone Numbers: Home **361-1330**   Work **TTB - 361-2871**

Date and Time of Incident: **1-5-06 / 8:55pm**   **741-6475 cel.**

Department Complaint Control Number: **06-327**

Name of Officer(s) against whom complaint is being filed, or other identifying information:

Name: **GREGORY METALES** Rank: **SGT** Badge No.: **741**

Vehicle: **50**   Duty Status: On **X** Off ___

Name(s)/Address(es)/Phone Number(s) or other identifying information concerning witness(es):

**COMPLAINANT WILL PROVIDE LIST**

Statement of Allegation:
I left mobile on the Run fighting with my girlfriend. I did curse on the phone Sgt me tales told me to watch myself the he told me to shut up step towards me my being ma ad mad told him to leave me the F*** alone he then Grabbed my neck and smashed my head to the ground leaving a lesch on my forehead and nose, he then brought me to the police vehical

I understand that this statement of complaint will be submitted to the City of Middletown Police Department and may be the basis for an investigation. I declare that the facts contained herein are an accurate and true account to the best of my knowledge and belief. I further declare that this complaint is made voluntarily and without persuasion, coercion or promise of any kind.
I understand that I may be required to appear at another time to give information or to appear at a hearing to testify under oath concerning all matters relevant to this complaint.
***False statements made in the foregoing complaint are punishable as a Class A misdemeanor pursuant to Section 210.45 of the Penal Law. Accordingly I hereby affirm under that the foregoing statements are true under penalty of perjury.***

Date and Time: **1/5/06**

Signature of Complainant
(insert REFUSED if Complainant refuses to sign).

Receiving Officer

I did call him a dick th he punched me in the left Jaw. infront of another officers, office officer Jackler in car #6. Officer Jackler back at the ~~first~~ Police Station I ask why he punched me in the face he said "you did call him a Dick." I the ask officer Metakes why he said he doesn't know what I'm talking about the I ask him if that was allowed hypothetically he said No.

EXHIBIT "C"

TO: LT. FREEMAN

FROM: P.O. JACKLER

SUBJECT: TRANSPORT SUPPLEMENT

1/11/2006

EVENT #06-00325


ON 1/5/06 AT APPROX. 8:55PM, I, OFFICER JACKLER, RESPONDED TO
MOBIL ON THE RUN TO ASSIST SGT. METAKES OF THE NARCOTICS UNIT.
UPON ARRIVAL, SGT. METAKES HAD A SUBJECT, NOW KNOWN TO ME AS
ZACHARY JONES, HANDCUFFED AND UP AGAINST THE NARCOTICS CAR FOR
DISORDERLY CONDUCT.   I OBSERVED JONES TO HAVE MULTIPLE ABRASIONS
ON HIS FACE.   I OPENED UP THE DRIVER'S SIDE REAR DOOR OF MY
PATROL UNIT #6 AND SGT. METAKES PLACED JONES IN THE BACK SEAT.
UPON CLOSING THE DOOR, JONES UTTERED THE WORD "DICK". SGT.
METAKES THEN RE-OPENED THE DOOR AND STRUCK JONES IN THE FACE,
THEN RE-CLOSED THE DOOR. WHILE I WAS TRANSPORTING JONES BACK TO
370 HE ASKED ME "IS HE ALLOWED TO DO THAT"? I STATED TO JONES TO
DISCUSS THE SITUATION WITH THE OTHER OFFICER ONCE WE GET BACK
370.

                         RESPECTFULLY,

                         P.O. JASON JACKLER

EXHIBIT "D"

TO: LT. P. RICKARD, BUREAU COMM. OF OPERATIONS

DATE: 01/18/2006

RE: 06-0325

FROM: P.O. S. GARRETTO #944

---

ON JANUARY 13, 2006 AT MIDDLETOWN POLICE HEADQUARTERS I WAS
ORDERED TO SUBMIT THIS STATEMENT BY LT. PAUL RICKARD. I GIVE
THIS STATEMENT AT HIS ORDER AS A CONDITION OF EMPLOYMENT. I HAVE
NO ALTERNATIVE BUT TO ABIDE BY THIS ORDER OR FACE DISCIPLINE, UP
TO AND INCLUDING TERMINATION.

IT IS MY BELIEF AND UNDERSTANDING THAT THE DEPARTMENT REQUIRES
THIS STATEMENT SOLELY AND EXCLUSIVELY FOR INTERNAL PURPOSES AND
WILL NOT AND CANNOT BE USED AGAINST ME IN ANY SUBSEQUENT
CRIMINAL PROCEEDINGS. I AUTHORIZE RELEASE OF THIS REPORT ONLY TO
MY ATTORNEY OR DESIGNATED REPRESENTATIVE.

I RETAIN THE RIGHT TO AMEND OR CHANGE THIS STATEMENT UPON
REFLECTION TO CORRECT ANY UNINTENDED MISTAKE WITHOUT SUBJECTING
MYSELF TO A CHARGE OF UNTRUTHFULNESS.

ON 01/05/06 I WAS ASSIGNED DESK DUTY AND A W/M SUBJECT, LATER
IDENTIFIED AS ZACHARY JONES, CAME INTO THE LOBBY REQUESTING TO
USE THE RESTROOM. HE WAS THEN ADVISED THAT WE (370) DID NOT HAVE
A PUBLIC RESTROOM. AT THAT TIME HE STATED THAT HE HAD JUST BEEN
ARRESTED AND RELEASED AND NEEDED TO USE THE RESTROOM. R/O ADVISED
LT. WARYCKA OF SAME AND JONES WAS THEN ESCORTED INTO 370,BY R/O,
TO THE CELL BLOCK AREA TO USE THE TOILET IN THE CELL BLOCK. WHILE
ESCORTING JONES TO THE CELL BLOCK, R/O ASKED THE SUBJECT WHAT HE
HAD BEEN ARRESTED FOR. HE STATED THAT HE HAD GOTTEN INTO A FIGHT
WITH HIS GIRLFRIEND. AT THAT TIME R/O OBSERVED A LARGE BUMP ON
THE SUBJECTS FOREHEAD, AS WELL AS ABRASIONS TO HIS FACE. I THEN
ASKED IF HIS GIRLFRIEND HAD CAUSED HIS INJURIES. HE STATED THAT
SHE DID NOT AND IT WAS THE SERGEANT WHO ARRESTED HIM. HE WENT ON
TO STATE THAT HE WAS THROWN TO THE GROUND CAUSING HIS HEAD TO HIT
THE GROUND. HE FURTHER STATED THAT AFTER HE WAS HANDCUFFED HE
CALLED THE SERGEANT A "DICK" AND THEN THE SERGEANT PUNCHED HIM.
JONES ADVISED THAT HE KNEW HE WAS WRONG AND SHOULDN'T HAVE CALLED
THE SERGEANT A "DICK", BUT ADVISED THAT HE IS TAKING CRIMINAL
JUSTICE IN COLLEGE AND HE KNOWS IT IS WRONG TO PUNCH SOMEONE IN
THE FACE AFTER THEY ARE HANDCUFFED. JONES THEN STATED THAT HE
WANTED TO TALK TO SOMEONE ABOUT MAKING A COMPLAINT.

DURING R/O'S CONVERSATION WITH JONES R/O DETECTED THE ODOR OF AN
ALCOHOLIC BEVERAGE EMINATING FROM JONES' PERSON. JONES WAS THEN
ASKED IF HE HAD BEEN DRINKING AND HE STATED THAT HE HAD NOT.

AFTER USING THE TOILET R/O ESCORTED JONES BACK TO THE FRONT
LOBBY AND ADVISED HIM TO WAIT WHILE R/O ADVISED LT. WARYCKA OF

JONES' REQUEST.

LT. WARYCKA WAS ADVISED OF SAME.

R/O LATER LEARNED THAT P.O. JACKLER HAD TRANSPORTED JONES FROM
HIS PLACE OF ARREST ON MONHAGEN AVE TO POLICE HEADQUARTERS.

I SPOKE WITH P.O. JACKLER REGARDING THE ALLEGATION BEING MADE ON
A CALL HE RESPONDED TO.

R/O SUBSEQUENTLY SPOKE WITH P.O. JACKLER AND INQUIRED TO WHETHER
LT. WARYCKA CONTACTED HIM REGARDING THE ABOVE MENTIONED
ALLEGATIONS.HE STATED THAT HE HAD NOT BEEN CONTACTED YET AND
RECEIVED AN E-MAIL INSTRUCTING HIM TO SUBMIT A MEMO TO LT.
FREEMAN ABOUT THE ABOVE. R/O THEN ASKED IF HE HAD TALKED TO
ANY THER OFFICERS REGARDING THIS. P.O. JACKLER ADVISED THAT HE
HAD BEGUN TO TALK TO LT. NAPOLI, BUT WASN'T ABLE TO FINISH HIS
CONVERSATION AS HE WAS DISPATCHED TO A CALL. R/O ADVISED P.O.
JACKLER THAT HE SHOULD CONTACT LT. WARYCKA, AS LT. WARYCKA WAS
HIS SUPERVISOR ON THE DATE THE ALLEGATION HAD BEEN MADE. R/O
ASSURED P.O. JACKLER THAT IF HE WAS ASKED TO GIVE AN ACCOUNT OF
WHAT HE DID OR DID NOT WITNESS,HE WAS TO BE TRUTHFUL IN ANY
STATEMENT THAT HE MADE. FURTHER, THAT AS LONG AS HE DID THIS HE
WOULD BE OKAY AND HAVE NOTHING TO WORRY ABOUT. HE THEN STATED
THAT HE WOULD CONTACT LT. WARYCKA AND THANKED R/O FOR HIS ADVICE.

RESPECTFULLY SUBMITTED,

P.O. S.GARRETTO #944

**EXHIBIT "E"**

(PO JACKLER,JASON M)

Message Title: KEEP IT UP
Date/Time: 10/31/2005  11:55 AM
From:   LT/TRAIN CORCORAN,JAMES B.
To: 753 ·579· 974  1047  1092  1138
------------------------------------------------------------------------

P.O. Jackler,                              Oct. 31, 2005

I am pleased to see your field training sheets are showing
improvement and your motivation has been improving.  Keep up the good
work.

Lt. Corcoran

EXHIBIT "F"

CITY OF MIL ETOWN – BOARD OF POLICE C( ISSIONERS
January 19, 2006

The January meeting of the City of Middletown Board of Police Commissioners was held on January 19, 2006 at 5:00 p.m. in the Mayor's Office of City Hall.

**ROLL CALL:** Commissioners (Mayor) Duncanson (Chairwoman), Brooks, Lomascolo, Marks, and Sullivan and Chief Byrne and Lt. Rickard were present.

On a motion by Commissioner Lomascolo and seconded by Commissioner Sullivan, the Commission unanimously voted to accept the minutes of December 1, 2005.

**COMPENSATION:** Chief Byrne updated the Commission on the status of the officers on 207c. Detective Bruce, Sergeant Powers and Officer Fuller continue to be out until further notice with possible retirements pending. Officer Ferriolo has returned to light duty status. Officer Fattorusso continues to be on a light duty status. Our compensation carrier, Triad, is continuing to assist us with Officer Fuller's retirement.

**INTERVIEWS:** Pre-permancy interviews were held with Officer Nathanael DeYoung beginning at 5:39 p.m. and ending at 5:54 p.m. and Officer Jason Jackler beginning at 5:55 p.m. and ending at 6:04 p.m. Both were hired on January 31, 2005.

At 6:05 p.m. on a motion by Commissioner Sullivan and seconded by Commissioner Lomascolo, the Commission voted to go into executive session to discuss a particular person returning to the regular meeting at 6:40 p.m. on a motion by Commissioner Lomascolo and seconded by Commissioner Sullivan.

On a motion by Commissioner Marks and seconded by Commissioner Sullivan, the Commission unanimously voted to retain Officer DeYoung.

On a motion by Commissioner Marks and seconded by Commissioner Sullivan, the Commission unanimously voted to dismiss Officer Jackler from further employment effective January 21, 2006.

Interviews for police officer were conducted to fill several existing vacancies. Fredrick Slanovec, James Schoenleber, Geoffrey Stafford, Jacqueline Blair, Jason Berman, and Patrick Gass were interviewed. On a motion by Commissioner Lomascolo and seconded by Commissioner Sullivan, the Commission unanimously voted to hire Fredrick Slanovec, James Schoenleber, Jacqueline Blair, and Jason Berman effective January 30, 2006. The next Orange County Law Enforcement Institute class begins February 6, 2006.

**OLD BUSINESS:** The Tactical Response Team has been trained and equipped to level where they have been deemed by their Supervisors to be ready for duty. A comprehensive SOP has been prepared and will soon be adopted. On a motion by Commissioner Marks and seconded by Commissioner Lomascolo, the Commission gave approval for the formalized TRT to be utilized as

created.   They wish to conduct training in July and August 2006 at our headquarters.   On a motion by Commissioner Lomascolo and seconded by Commissioner Marks, the Commission unanimously voted to approve the NYTOA training commencing in July/August 2006 at MPD Headquarters/Range.

The School Resource Officers, Officer Nyland and Officer Weymer, will be meeting with school and city officials at the Middletown School District Board Office on January 30, 2006 at 6:30 p.m.  Next month's meeting of the joint Orange County School Resource Officers will be hosted by the Middletown Police Department.

The County Records Management System has until the end of January for support contracts.  Chief Byrne will keep the Commission advised.

The position of Police Assistant for Crime Prevention/Crime Analysis continues to be pursued.   The Chief completed exam specifications to assist the Civil Service Commission with more information on the details of the examination.  A March date is possible.

Accreditation is progressing well.  Many standards have been adopted and efforts will continue in 2006 to achieve this goal.

**NEW BUSINESS:**  Officers Jeffry Thoelen and Michael Ribeiro will graduate from the Orange County Law Enforcement Institute on January 20, 2006 at 10:00 a.m. at the Orange County Fire Training Center.

Work on restoring the exterior of the police station should begin soon.

A Sergeant on the midnight shift is out on 207-c pending retirement.  On a motion by Commissioner Marks and seconded by Commissioner Lomascolo, the Commission, understanding the current and long-term supervision needs of the department and recognizing the protracted absence often created with pending 207-c retirement applications, and without creating a new position, voted unanimously to fill this vacancy with a new Sergeant.  The Chief will schedule Sergeant interviews for the February meeting.

Lt. Patrick Freeman graduated from the FBI National Academy Class 223 on December 13, 2005.  He did extremely well.  Lt. Freeman will attend the February 16, 2006 meeting of the Commission with a report of his training. Lt. James Corcoran has been approved to attend the National Academy in the fall of 2006.

Officer Michael Canonico has been selected as the Downtown Officer for the year.  His assignment is augmented by other shifts and should increase our visibility in the downtown area.

Officer Patrick Cunningham has been selected as the K-9 Officer.  He will be attending a 16 week training program funded by a grant.  K-9 equipment and a vehicle will also be acquired to further this initiative.  The Chief will keep the Commission advised.

The Department is working with the Mayor and Corporation Counsel to recommend non-renewal for the Caribe Garden located at 21 West Main Street based on it being a disorderly premise.  This recommendation is based on

A Dispatcher examinatio will be given on March 18, 2006.  The filing date for the exam is February 8, 2006.   Posters were printed and have been distributed and posted.

There being no further business, the meeting was adjourned at 9:45 p.m. The next meeting will be held on February 16, 2006 at 5:00 p.m. in the Mayor's Office of Middletown City Hall.

Respectfully submitted,

Matthew T. Byrne
Chief of Police

FEB 2 1 2006

**EXHIBIT "G"**

To:    Chief Matthew T. Byrne

From:  Lt. Patrick Freeman

Re:    Zachary Jones

This memo is in regard to the personnel complaint filed by Mr. Zachary Jones in reference to his arrest by Sgt. Gregory Metakes on the 5th of January 2006.

Mr. Jones stated that he was leaving the Mobil Mart "On the Run" on the corner of West Main Street and Monhagen Avenue at approximately 8:55 pm. He had just left a party in the Town of Wallkill and had gone with two individuals (John Shuster and Greg Ool) to the "On the Run" store to attempt to purchase beer. At that point, even by his own statement, he was contacted by his girlfriend via his cell phone, and got involved in a loud, off color, and disruptive argument.

These actions, after a warning, led to his subsequent arrest by Sgt. Metakes, who then claims that Jones was resistant to the initial arrest causing Jones to be taken forcibly to the ground, affecting the arrest. At this point Jones suffered some abrasions to his face.

The statement that was taken from Greg Ool supports the claim of resistance in that Mr. Ool states that after the confrontation between Sgt. Metakes and Jones, Sgt. Metakes went to grab Jones and Jones pulled his shoulder away from Metakes to avoid his arrest, and was then taken to the ground by Sgt Metakes, and suffered the injury.

At that point Jones was handcuffed and a marked patrol unit was called to the scene to transport the arrested individual to the station for processing. The other individuals, Ool and Shuster, drove their vehicle out of the parking lot, and out of view of the events that followed.

It was at this point that Officer Jason Jackler arrived with a marked unit to facilitate the transport of Jones. Sgt. Metakes states that he led Jones over to the marked unit with some difficulty, and placed him into the rear driver's side of the vehicle. Sgt. Metakes stated that there was a conversation regarding some belongings of Jones that had been left on the Patrol car trunk. Sgt. Metakes returned to the vehicle, recovered the items and placed them with Jones and attempted to close the door. Jones apparently made some verbal comment, which was assumed by Sgt. Metakes to be a complaint of pain, that the door had possibly closed on the leg of Jones.

When Sgt. Metakes leaned in to converse with Jones, it appeared to Metakes that Jones was about to spit in his face, at that point Metakes, struck out with his left hand to push away the face of Jones to avoid the expectorate.

There was a statement that was taken from Officer Jason Jackler. He stated that he had arrived as a transport officer to assist Sgt Metakes. He observed Sgt Metakes place Jones into the backseat of the patrol vehicle, and claimed that there was a confrontation between

Metakes and Jones, in the back seat, and he stated that he saw Sgt Metakes' arm extend and Jones's face recoil. Jackler stated that from his position, he was unable to see if it was a push or a strike.  Jones stated that while being placed into the marked unit he called Sgt Metakes a "Dick", and then Sgt Metakes punched him in the face.

The video taken from the computer system of the Mobil station was viewed and is inconclusive.

The Orange County District Attorneys Office was contacted and the information was faxed to them and they determined that there was no criminal conduct.  Jones was due to appear in Middletown City Court on 1/23/06 and failed to do so, a bench warrant has since been issued.

It appears to this investigator that no apparent misuse of force has taken place. The claims of Jones are **Unfounded.**

However, it does appear that the department policy has been violated. Sgt Metakes has failed to follow the policy (OGO-041-05), stating that individuals "shall be charged with resisting arrest whenever they commit the offense of resisting arrest". Clearly the subject resisted the arrest of his person and should have been charged accordingly.